UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| HILLIARD A. FULGHAM, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| v. | ) | Case No. 17-CV-0010-CVE-FHM |
| SCOTT CROW, Director,[1] | ) |  |
| Respondent. | ) |  |

**OPINION AND ORDER**

Now before the Court is petitioner's 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1). For the reasons below, the petition will be denied.

**I.**

This cases arises from petitioner's murder convictions. The investigation began in 2006, when police discovered that two women had been stabbed to death in a Tulsa apartment. See Dkt. # 8-9, at 248; see also Dkt. # 8-16, at 58. Police collected blood samples from bathroom tissue and the apartment's window ledge, but the DNA did not match any known suspects. See Dkt. # 8-10, at 198-99. The case initially went cold. Id. In 2009, petitioner contributed his DNA to the Combined DNA Index System ("CODIS") after he was incarcerated in Mississippi. See Dkt. # 8-10, at 299-300. His DNA could not be excluded from the Tulsa murder scene, and, according to a forensic scientist, the statistical probability that an unrelated person contributed the blood on the window ledge was at least 1 in 3.3 billion. See Dkt. # 8-11, at 55-56.

---

[1] Petitioner is incarcerated at the Lawton Correctional Facility (LCF), a private prison in Lawton, Oklahoma. See Dkt. # 1 at 1. Scott Crow, Director of the Oklahoma Department of Corrections, is therefore substituted in place of Joe Allbaugh as party respondent. See Habeas Corpus Rule 2(a). The Clerk of Court shall note the substitution on the record.

The State charged petitioner with two counts of first degree murder in violation of OKLA. STAT. tit. 21, § 701.7. See Dkt. # 8-17, at 26. Petitioner's defense theory was that he fought with the killer on the night of the crime; that petitioner bled into the killer's face, eyes, and ears; and that the killer then transferred petitioner's blood to the murder scene. See Dkt. # 7-1, at 11. However, petitioner's ex-girlfriend testified that he admitted to stabbing the victims. See Dkt. # 8-9, at 281-82. After a five-day trial, the jury convicted petitioner on both counts. See Dkt. # 8-12, at 88. The state court sentenced petitioner to life imprisonment without parole, in accordance with the jury's recommendation. See Dkt. # 8-14, at 13.

Petitioner perfected a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA). See Fulgham v. State of Oklahoma, 400 P.3d 775 (Okla. Crim. App. 2016).[2] The OCCA affirmed the conviction and sentence. Id. Petitioner filed the instant § 2254 petition (Dkt. # 1) on January 9, 2017. He raises two propositions of error:

(Ground 1): The state court violated the Interstate Agreement on Detainers Act ("IAD") by failing to commence a trial within 120 days of petitioner's transfer to Oklahoma; and

(Ground 2): Trial counsel was ineffective for failing to pursue the IAD violation.

See Dkt. # 1, at 4, 6.

Respondent filed an answer (Dkt. # 7), along with copies of the state court record (Dkt. # 8). Respondent concedes, and the Court finds, that petitioner timely filed his federal habeas petition and exhausted state remedies. See Dkt. #7 at 2; see also 28 U.S.C. §§ 2244(d), 2254(b)(1)(A). However, respondent contends that both claims fail on the merits. The matter is fully briefed and ready for review.

---

[2]  Respondent failed to provide the OCCA ruling as part of the record. The Court, therefore, takes judicial notice of the opinion on Westlaw.

**II.**

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. See 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[3] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," id.; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, id. at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." Id. (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law

---

[3] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)); see also House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

3

under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." Id. Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the state court's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," Harrington v. Richter, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

**A. Violation of Federal Detainer Law (Ground 1)**

Petitioner, who was transferred from Mississippi to Oklahoma to stand trial, seeks habeas relief based on an alleged violation of the IAD. "The IAD provides cooperative procedures for transfers of prisoners between the federal and state jurisdictions that have adopted the interstate compact." Fulgham, 400 P.3d at 778. Article IV of the IAD provides that "trial shall be commenced within . . . 120 days of the arrival of the prisoner in the receiving state." OKLA. STAT. tit. 22, § 1347. Article V directs the state court to dismiss the indictment with prejudice if the trial is not timely commenced. Id. Because petitioner's trial commenced 565 days after his transfer to Oklahoma, he

4

urges this Court to vacate his murder convictions and dismiss all charges with prejudice. See Dkt. # 1, at 4, 13.

The OCCA considered this argument and determined that the IAD claim was waived. The OCCA noted that the IAD "was never acknowledged or raised until [petitioner's] formal sentencing hearing – well after the completion of his jury trial. And, even then, the issue was raised by the trial court – not [petitioner]." Fulgham, 400 P.3d at 778.[4] Therefore, the OCCA concluded that "[petitioner] acquiesced to treatment inconsistent with the IAD's time limits." Id. at 779. The opinion further noted that the protections of the IAD "had already terminated" at the time of sentencing, when the issue first arose. Id. at 779-80.

Under federal law, the "speedy trial rights guaranteed by the IAD may be waived either explicitly or by an affirmative request for treatment that is contrary to or inconsistent with those speedy trial rights." New York v. Hill, 528 U.S. 110, 118 (2000). In other words, "[a] defendant may waive his IAD rights by agreeing to a trial date that is later than the Agreement requires." United States v. McIntosh, 2013 WL 1490849, at * 11 (10th Cir. April 12, 2013) (citing Hill, 528 U.S. at 118).[5] The Supreme Court reasoned that, without implicit waivers, defendants could "escape justice by willingly accepting treatment inconsistent with the IAD's time limits, and then recant[] later on." Hill, 528 at 118.

Further, even if the issue is preserved, habeas relief is not automatically warranted based on a IAD violation. "[R]ights created by the [IAD] are statutory, not fundamental, constitutional, or

---

[4]  It appears that the state court discovered Oklahoma's IAD request for temporary custody in the case file while preparing for the sentencing hearing. See Dkt # 7-1, at 12.

[5]  The Court cites this decision, and other unpublished decisions herein, as persuasive authority. See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

5

jurisdictional in nature." Greathouse v. United States, 655 F.2d 1032, 1034 (10th Cir. 1981). Only "special circumstances" permit collateral attack of a conviction under § 2254 based on alleged violations of the IAD. See Knox v. Wyoming Dept. of Corrections, 34 F.3d 964, 967 (10th Cir. 1994). Such circumstances exist where the alleged violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." Id. at 968 (quoting Reed v. Farley, 512 U.S. 339, 348 (1994)).

Having reviewed the record, the Court declines to grant habeas relief based on the IAD. Petitioner concedes he did not raise the issue or request dismissal prior to trial. See Dkt. # 1, at 6; see also Dkt. # 7-1, at 16. The OCCA, therefore, appropriately applied Hill in determining that petitioner waived his rights under the IAD. More importantly, petitioner has not alleged "that his ability to present a defense was prejudiced by the delay." Reed v. Farley, 512 U.S. 339, 353 (1994) (addressing IAD violations in the habeas context). He testified in his own defense, and the jury elected not to believe his story that the killer bled into his face during a fight. The Court, therefore, cannot find that the IAD violation constitutes a miscarriage of justice, and Ground 1 fails.

**B. Ineffective Assistance of Counsel (Ground 2)**

Petitioner next argues that trial counsel was ineffective for failing to timely seek dismissal under the IAD. See Dkt. # 1 at 6. The OCCA rejected this claim under the two-prong test announced in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. 466 U.S. at 687. To satisfy the second prong, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Hobdy v. Raemisch, 916 F.3d 863 (10th Cir. 2019) (quotations omitted). The OCCA concluded that petitioner "fail[ed] to show Strickland prejudice," explaining:

> [Petitioner] essentially asks this Court to assume that had his trial counsel asserted [petitioner's] IAD rights prior to trial, his case would have been dismissed with prejudice. . . . [D]uring the course of [petitioner's] case, [petitioner] was appointed three separate attorneys. We can only speculate what would have occurred if at some point one of these three attorneys had raised the issue. Moreover, had [petitioned] flagged this issue some time prior to trial, it is not unrealistic to assume the trial court could have complied with the IAD's requirements. Nor is it unrealistic to assume that the trial court would have advanced the date of the trial or otherwise ensured a proper record was made establishing good cause for delay, either of which would have satisfied Article IV(c).

Fulgham, 400 P.3d at 780.

Viewing the decision with double deference, Knowles v. Mirzayance, 556 U.S. 111, 123 (2009), the Court agrees that petitioner's ineffective-assistance claim is too speculative to warrant relief. The record reflects that: (i) petitioner sought some of the continuances and changed counsel multiple times; (ii) the prosecutor had difficulty locating an out of state witness; (iii) additional DNA testing was necessary; and (iv) a detective suffered a death in the family. See Dkt. # 8-17, at 10-11; 77; 114; and 118. Under these circumstances, the state court may very well have overruled any IAD objection and made a finding of "good cause," which tolls the 120-day period. See OKLA. STAT. tit. 22, § 1347. Petitioner has also not demonstrated a reasonable probability that the trial court would have dismissed the case with prejudice, rather than simply advancing the trial date. Petitioner was accused of brutally stabbing two women in their home, and such charges are not dismissed lightly. Therefore, the Court cannot find a substantial likelihood of a different outcome, had counsel raised the IAD violation. See Harrington v. Richter, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable."). The OCCA appropriately rejected petitioner's ineffective-assistance claim (Ground 2), and the petition (Dkt. # 1) must be denied.

**III.**

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons discussed above, petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk shall substitute Scott Crow in place of Joe Allbaugh as respondent.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied.**

3. A certificate of appealability is **denied**.

4. A separate judgment will be entered herewith.

**DATED** this 31st day of December, 2019.

                                                                   _____
                                                                   CLAIRE V. EAGAN
                                                                   UNITED STATES DISTRICT JUDGE